DOUGLAS FAIRBANKS, Plaintiff, *v.* HYMAN WINIK and Others, Defendants.

Supreme Court, New York Special Term, December, 1922.

Injunctions — when moving picture actor cannot enjoin, pendente lite, the use of a picture in which he has no proprietary rights — Civil Rights Law, §§ 50, 51.

An actor who has appeared in moving pictures for purposes of trade may not invoke sections 50 and 51 of the Civil Rights Law to prevent the producer from using the films even in a different manner than originally contemplated.

Where an actor does not himself produce a film and has no exclusive title as owner to its use, possession or disposition, he has no such proprietary right therein as to enable him to enjoin its use without his consent. His relation to the producing company is that of employee.

Where the original contract provided that the pictures should be presented by a company of which one G. was to direct the supervision and the producer's assignee now announces its intention to re-edit and reconstruct said films into playlets, the principal actor is not entitled to an injunction *pendente lite* even though G. is not concerned in the reconstruction.

It seems that a release executed by the actor whereby he discharged the producer from " all covenants, contracts, controversies, agreements and promises " does not discharge those *in futuro.*

It also seems that should the actual display of the pictures be a garbled one injurious to plaintiff's reputation he would not be without a remedy.

MOTION for injunction *pendente lite.*

*O'Brien, Malevinsky & Driscoll,* for plaintiff.

*O'Brien, Boardman, Parker & Fox,* for defendants.

WAGNER, J. The plaintiff in 1915 entered into a contract, since canceled, with the Majestic Motion Picture Company, wherein he was to act in a series of pictures to be presented by the company, in which one Griffiths was to direct the supervision. After the same were produced and released the rights to said pictures came into the hands of its successor in interest, the Triangle Film Corporation, which, by contract, has assigned its rights to defendant Winik, who in turn has given the right to re-edit and reconstruct the said pictures to the defendant Leader Film Corporation, which latter defendant has announced its intention to re-edit and reconstruct these films by making playlets thereof. The defendants expressly disclaim that they intend to add or insert photographs or pictures therein that were not made at the time the entire film was photographed; that any other direction or supervision will be employed. They assert that any portions that may be added will be those in which the plaintiff originally acted with the same cast, and will not include scenes from any other film than those taken in the original pictures, and that the desire of defendant is merely to rearrange and reconstruct said scenes in such manner as to bring the same up to date and in no way to disparage or detract but rather to enhance the reputation of the plaintiff. Based on the provision of the contract which required the direction of supervision by Griffiths, the plaintiff prays for a temporary injunction to restrain the defendants from re-editing or reconstructing, from interfering in any way with the sequence and construction or altering any portion of said picture, together with a restraint of advertising and release of the same thereafter. Reliance is also placed by plaintiff on sections 50 and 51 of the Civil Rights Law, alleged to protect plaintiff from the invasion of his rights, from using pictures in which he appears for purposes of trade. Apart from the fact that in view of the statutory remedy the allegations of the complaint must be so raised as to bring the action within the purview of the statute, I am of the opinion that the sections are not applicable for the reason that the very contract of 1915 afforded to the company full rights to use and exploit said pictures. Further, the plaintiff was in law but an employee of the corporation whose property the pictures became, and his contract was one of service identical with that of other actors who took a part in the portrayal of the scenes. The scenarios did not belong to the plaintiff, nor was he the producer of the pictures. Not being an individual production and having no exclusive right as owner to its use, possession or disposition, he fails to fall within the category of those whose creation and authorship of the subject-matter give to them a proprietary right, the use of which uncon-

sented to or forbidden can be enjoined. It will thus be seen (*Chaplin* v. *Vitagraph-Lubin-Selig, Essanay, Inc.*, 174 App. Div. 864, 866) a distinction in principle and reason exists between the case at bar and *DeBekker* v. *Stokes*, 168 App. Div. 542; *Manners* v. *Famous Players-Lasky Corporation*, 262 Fed. Rep. 811; *Colgate* v. *White & Co.*, 180 id. 882; *Fisher* v. *Star Co.*, 231 N. Y. 414, and other similar cases relied upon by plaintiff in support of his claim for injunctive relief, in all of which proprietary interests of authorship or ownership remained in the owner or actor and where but restricted licenses of use were granted. It appears that a dispute arose between plaintiff and the Majestic Company, resulting in cessation of service by plaintiff and an application by the company to enjoin plaintiff from appearing in the service of any other film concern; that said motion for a temporary injunction was denied, and that thereafter the parties effected a settlement of the controversy by exchanging mutual releases. The defendant insistently claims that by reason of the wording of the release in said settlement the plaintiff has no remedy in this action, relying on the phrase in said release discharging " all covenants, contracts, controversies, agreements, and promises;" and claiming that by the release of the covenant those *in futuro* are discharged by the release thereof as well as those *in esse*. I am not in accord with that view. Nor do I think that *Chaplin* v. *Rollo Sales Corporation*, decided by the United States District Court on September 16, 1921, lends authority in support of the plaintiff's view, for in that case by the terms of the contract the plaintiff was to produce a complete picture, having sole supervision, management, charge and control of and over the production of pictures and the scenario, so that any change thereof, even of the slightest degree, without plaintiff's consent, would be in direct contravention of the agreement. In addition it appears that the defendants intend in their advertising to announce, in conjunction with the subject of the play, that the same is reconstructed and re-edited from the original play in which the plaintiff took part; that every part of the reconstructed plays in which the plaintiff appears will be as originally taken. The papers submitted present no convincing proof that there is any intent of deception in defendants' contemplated acts. If the actual display of the pictures should be a garbled one, injurious to plaintiff's well-known reputation, a legal remedy exists to stop their exploitation. At this juncture, however, I can see no basis for such apprehension as would justify the issuance of a temporary injunction. The motion for an injunction *pendente lite* is, therefore, denied.

Ordered accordingly.